**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| In re *Ex Parte* Application, Under 28 U.S.C. § 1782, of Public Joint-Stock Co. Nat. Bank Trust | Case No. 23 Misc. 6 (PGG) |

### PROPOSED INTERVENORS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND TO STAY RESPONDENTS' OBLIGATION TO COMPLY WITH SUBPOENAS

ORRICK, HERRINGTON & SUTCLIFFE LLP

Darrell S. Cafasso
Harry F. Murphy
Thomas M. Garvey, Jr.
dcafasso@orrick.com
hmurphy@orrick.com
tgarvey@orrick.com

51 West 52nd Street
New York, NY  10019-6142
+1 212 506 5000

*Attorneys for Proposed Intervenors*
*Louis Dreyfus Company Suisse SA;*
*Louis Dreyfus Company Asia PTE Ltd.; AND*
*Louis Dreyfus Company Trading & Service Co.*
  *SA*

May 4, 2023

## **TABLE OF CONTENTS**

Introduction ..................................................................................................................... 1

Background ..................................................................................................................... 3

Argument ....................................................................................................................... 5

   I.   Proposed Intervenors' Motion To Quash Is Meritorious. ................................... 5

      (a)   The discovery sought is not "for use" in a foreign proceeding. .................... 5

      (b)   The BVI Action is not in "reasonable contemplation." ................................. 7

   II.   The Proposed Intervenors Should Be Permitted To Intervene As Of Right. ...................... 9

   III.   Alternatively, the Proposed Intervenors Should Be Permitted To Intervene Based on the Court's Discretion. .................................................................................. 12

   IV.   Discovery Should Be Stayed Pending Resolution of Threshold Issues Under Section 1782. ................................................................................................... 12

Conclusion .................................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017)........................................................................5

*In re Application of China Construction Bank (Asia) Corporation Limited*,
No. 1:23-mc-00017, ECF No. 9 at *2 (S.D.N.Y. Jan. 23, 2023) ................................2

*In re Application of Sarrio, S.A.*,
119 F.3d 143 (2d Cir. 1997)......................................................................2, 3

*In re Asia Mar. Pac. Ltd.*,
253 F.Supp.3d 701, 707 (S.D.N.Y. 2015) ...........................................................7

*Bay Casino, LLC v. M/V Royal Empress*,
199 F.R.D. 464 (E.D.N.Y. 1999) ...................................................................9

*Cargill, Inc. v. Public Joint Stock Co. Nat. Bank Trust*,
No. 1:23-mc-00134 (S.D.N.Y. Apr. 29, 2023) ............................................ *passim*

*Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015)........................................................................7

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994).......................................................................12

*De Leon v. Clorox Co.*,
No. 19-mc-80296-DMR, 2020 WL 4584204 (N.D. Cal. Aug. 10, 2020)..............................12

*Degrafinreld v. Ricks*,
417 F.Supp.2d 403, 407 (S.D.N.Y. 2006) ........................................................12

*Dow Jones & Co., Inc. v. U.S. Dep't of Justice*,
161 F.R.D. 247 (S.D.N.Y. 1995) ..............................................................10, 12

*Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets*,
847 F.2d 1038 (2d Cir. 1988)......................................................................10

*Gushlak v. Gushlak*,
486 F.App'x 215 (2d Cir. 2012)................................................................2, 12

*In re Hornbeam Corp.*,
14 Misc. 424 (Part 1), 2015 WL 13647606, at *3 (S.D.N.Y. Sept. 17, 2015).............10, 11, 12

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
33 F.4th 669, 680 (2d Cir. 2022) ....................................................................5

*In re Rep. of Kazakhstan for an Order Directing Discovery from Clyde & Co.*
*LLP Pursuant to 28 U.S.C. § 1782*,
110 F.Supp.3d 512 (S.D.N.Y. 2015).............................................................9

*In re SPS I Fundo de Investimento de Acoes Investimento no Exterior*, No. 22-mc
00118 (LAK), (S.D.N.Y. May 20, 2022).......................................................9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).................................................................................5, 7

*Jiangsu Steamship Co. v. Success Superior Ltd.*,
No. 14 Civ. 9997 (CM), 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ...................8

*In re Kidd*,
3:20-mc-00016 (KAD), 2020 WL 3035960 (D. Conn. June 5, 2020)...................13

*LaRouche v. FBI*,
677 F.2d 256 (2d Cir. 1982).......................................................................11

*Mennen v. J.P. Morgan & Co.*,
91 N.Y.2d 13 (1997) ...............................................................................4

*Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*,
No. 14-874-SLR/SRF, 2015 WL 5163035 (D. Del. Sept. 3, 2015).....................11

*In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*,
No. 15 MISC 319(LTS), 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015)...................8

*Pennwalt Corp. v. Durand-Wayland*,
708 F.2d 492 (9th Cir. 1983) ....................................................................13

*In re Request for Int'l Judicial Assistance (Letter Rogatory) from the Fed. Rep. of*
*Brazil*,
687 F.Supp. 880 (S.D.N.Y. June 8, 1988) ....................................................13

*Sackman v. Liggett Grp., Inc.*,
167 F.R.D. 6 (E.D.N.Y. 1996) ..................................................................11

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972)................................................................................11

*United States v. New York*,
820 F.2d 554 (2d Cir. 1987)........................................................................9

*In Re Verifone, Inc.*,
    No. 18-mc-80087-VKD, 2018 WL 3532761 (N.D. Cal. July 23, 2018) ...............................13

**Statutes**

28 U.S.C. § 1782..................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure § 24(a) .....................................................................3, 9

Federal Rule of Civil Procedure § 24(b).....................................................................3, 12

Press Release, Dep't. of Treasury, *Treasury Prohibits Transactions with Central
    Bank of Russia and Imposes Sanctions on Key Sources of Russia's Wealth*
    (Feb. 28, 2022), https://home.treasury.gov/news/press-releases/jy0612 ...................................7

Reuters, *Russia's Trust bank sues ex-B&N execs for 306.5 billion roubles*
    (Sept. 18, 2020), https://www.reuters.com/article/us-russia-banks-b-n-trust-
    idUKKBN26924V ......................................................................................................................8

Louis Dreyfus Company Suisse SA; Louis Dreyfus Company Asia PTE Ltd.; and Louis

Dreyfus Company Trading & Service Co. SA (collectively, "LDC" or the "Proposed Intervenors"),

by and through their undersigned counsel, hereby submit this memorandum of law in support of

their motion ("Motion") to permit LDC to intervene in order to oppose the discovery sought in this

action.[1]   In particular, LDC seeks to intervene to file a motion to quash the subpoenas (the

"Subpoenas") issued pursuant to the Court's April 18, 2023 Order (ECF No. 11) (the "Order")

granting the *ex parte* application (ECF No. 1) (the "Application") of Public Joint-Stock Company

National Bank Trust (the "Applicant" or the "Russian National Bank Trust") to take discovery

pursuant to 28 U.S.C. § 1782.[2]   Additionally, LDC respectfully requests that the Court stay

compliance with the Subpoenas issued pursuant to its Order until Proposed Intervenors' Motion to

Vacate and/or Quash is resolved.[3]

## INTRODUCTION

The only reason that "due process rights are not violated" by *ex parte* requests like the ones

---

[1]   Proposed Intervenors appear through counsel solely and for the limited purpose outlined by the Court to protect their interests in an action that they did not commence.  LDC does not in any way consent to the exercise of personal jurisdiction.

[2]   According to the Declaration of Neil Dooley in support of the § 1782 Application (ECF No. 3 ("Dooley Decl.")), LDC is alleged to have been involved in transactions with Bank of New York Mellon (subpoena at ECF No. 4-2); Societe Generale USA (ECF No. 4-5); and JP Morgan Chase Bank NA (ECF No. 4-6), potentially involving five of the alleged shell companies.  (Dooley Decl. at 14.)

[3]   LDC moves to intervene in this Action pursuant to guidance from the Clerk of Court that a motion to intervene in this action is procedurally proper.  Cargill, Inc., a similarly situated target of the Application, has filed a motion to quash in a related action.  *See Cargill, Inc. v. Public Joint Stock Co. Nat. Bank Trust*, No. 1:23-mc-00134 (S.D.N.Y. Apr. 29, 2023) (the "Cargill Action"). LDC agrees with Cargill, Inc. that the Subpoenas should be quashed.  *See* Memorandum of Law in Support of Cargill, Inc.'s Motion to Quash, Case No. 1:23-mc-00134 (ECF No. 2) ("Cargill Br.").  In the event the Court prefers LDC to move to intervene in the Cargill Action, we are of course happy to follow the Court's guidance.

made here is because an *ex parte* order can be challenged "by moving to quash."  *Gushlak v. Gushlak*, 486 Fed.App'x. 215, 217 (2d Cir. 2012).  As courts in this District have recognized when granting *ex parte* applications pursuant to § 1782, "the ultimate targets of a § 1782 discovery order issued to third parties have standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute."[4]  *In re Application of China Construction Bank (Asia) Corporation Limited*, No. 1:23-mc-00017, ECF No. 9 at *2 (S.D.N.Y. Jan. 23, 2023) (quoting *In re Application of Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997)).  Intervention is particularly crucial where (as here) the Application seeks to compel "any and all orders, instructions, or wire transfers . . . exceeding $50,000" with a dozen companies spanning a four-year period that begins a decade ago.  And all on the unchallenged self-serving say-so of a subsidiary of the Central Bank of the Russian Federation that the Subpoenas are narrowly tailored and that the requested documents are all somehow "for use" in contemplated future proceedings in the British Virgin Islands ("BVI")—proceedings which likely would never get off the ground in the BVI due to jurisdictional defects, agreements to arbitrate, and sanctions issues, as explained in Section I below.

In urging the Court to grant its Application *ex parte*, the Russian National Bank Trust warranted that "[t]o the extent Respondents object to the discovery sought, they can 'later challenge any discovery request by moving to quash' under Rule 45."  (ECF No. 2 at 11 (quoting *Gushlak v. Gushlak*, 486 F.App'x 215, 217 (2d Cir. 2012)).)  But it is "the ultimate targets of a § 1782 order issued to third parties"—rather than the Subpoena respondents—whose interests are at stake.  *Sarrio*, 119 F.3d at 148.  Proposed Intervenors are such ultimate targets.  Because they

---

[4]      LDC, Cargill, and other trading companies are such third-party "ultimate targets"—in contrast to the banking respondents to whom the Application is addressed.  Their respective roles are discussed *infra*.

have a direct legal interest in the subject matter of the proceeding and because the third parties that received the subpoenas do not have the same interest in protecting LDC's rights and interests, LDC should be permitted to intervene as a matter of right pursuant to Rule 24(a) or, alternatively, as a matter of the Court's discretion under Rule 24(b).

Finally, LDC respectfully requests that the Court stay discovery pending resolution of the challenge to the Order and the Subpoenas. Nothing in the Application or supporting materials indicates a looming deadline, limitations period, or other event in the BVI that necessitates discovery proceeding in the face of the objections that the Applicant was presumably trying to avoid by moving *ex parte*. (Indeed, it has now been several months since Applicant warranted that it would "soon" commence litigation in the BVI.) Failing to allow intervention would render Russian National Bank Trust immune from the American adversarial process as it tries to collect the requested information for the most tenuous of threatened potential foreign proceedings, of which there is still no sign on the horizon. Indeed, on these facts, such a brief pause would be the bare minimum of due process afforded by the *ex parte* path that the Applicant has elected. A party to litigation in the United States could never obtain discovery without affording the target the opportunity to object and potentially move to quash; a foreign party to a hypothetical foreign proceeding should not have greater rights.

## **BACKGROUND**

The Russian National Bank Trust's *ex parte* § 1782 application references 122 separate letters of credit issued to 14 commodities firms, including LDC, for financing in excess of $3.2 billion which, according to Applicant, are somehow related to transactions that NBT broadly asserts are fraudulent. Specifically, "a series of purported commodities transactions" allegedly moved the funds through a chain of "Conduit Companies" in order to "allow[] allowed [Mikail] Shishkhanov (and his co-conspirators) to surreptitiously loot Rost Bank" in order to benefit another

Russian bank, B&N Bank ("Binbank" or "B&N").  (ECF No. 2 at 1.)  Today, both Rost Bank and B&N are subsidiaries of the Russian National Bank Trust (and ultimately the Central Bank of Russia).  (ECF No. 2 at 2.)  The LDC entities are commodities traders targeted by the Application for allegedly loaning money to Conduit Companies and being repaid with funds "looted" from Rost Bank.  (ECF No. 2 at 5.)

The Russian National Bank Trust is therefore seeking to trace more than $3 billion in wire transfers involving a dozen alleged shell companies controlled by Shishkhanov by demanding records from seven financial institutions of all wire transfers involving identified Conduit Companies equal to or greater than $50,000.  (*See, e.g.*, ECF No. 4-2 (Proposed Subpoena of Bank of New York Mellon Corp.) ¶¶ 1-3 (requesting "any and all orders, instructions, or wire transfers, where the paying or receiving party was [an identified Conduit Company], in an amount equal to or exceeding $50,000 . . . from June 1, 2013 to September 30, 2017").

In actual fact, however, the Application fundamentally misunderstands the underlying transactions.  In the Dooley Declaration, Applicant relies on a "Representative Transaction" between Cargill and Midwestern Trading Group, Inc.  (Dooley Decl. at 5-12.)  As Cargill has now explained in the Cargill Action, the representative trade and in fact the entire theory of the case "confuses contracts for the purchase and sale of goods with documents evidencing the delivery of physical goods (a bill of lading), when in fact there is no necessary connection between the two." (Cargill Br. at 4.)  That is, Applicant ignores "the fundamental proposition that all parties to a letter of credit transaction deal in documents rather than with the facts the documents purport to reflect," meaning that international commodities trading often never results in physical delivery of the underlying commodity.  *Mennen v. J.P. Morgan & Co.*, 91 N.Y.2d 13, 21 (1997) (quotation, brackets, and ellipses omitted).  In short, the description of the trades in the Dooley Declaration—

and indeed the basis for the whole Application—is based on a thorough misrepresentation of the underlying transactions, which are entirely normal and legitimate. The Application is therefore little more than a fishing expedition.

## ARGUMENT

I. **Proposed Intervenors' Motion To Quash Is Meritorious.**

As previewed in LDC's March 30, 2023 letter to the Court (the "Letter") (ECF No. 10), and if allowed to be fully briefed in Proposed Intervenors' Motion to Quash, the Subpoenas are fatally flawed because they are not "for use" in a foreign proceeding "in reasonable contemplation" as required by § 1782. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).

(a) **The discovery sought is not "for use" in a foreign proceeding.**

It is unlikely that Applicant can carry its burden to "establish that [it] has the practical ability to inject the requested information into a foreign proceeding," as required by § 1782's "for use" requirement. *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 133 (2d Cir. 2017); *see also IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 680 (2d Cir. 2022) (reversing grant of § 1782 application where applicant "has not provided a sufficient basis to conclude that it would be able to" "clear a series of procedural hurdles under Cayman law before it can present any evidence to a Cayman court"). On the contrary, it is likely that a BVI court would not have jurisdiction over the claims that Applicant has indicated it plans to bring.

*First*, as explained more fully in the Declaration of Oliver Clifton in Support of Cargill, Inc.'s Motion to Quash, Case No. 1:23-mc-00134 (Cargill Action, ECF No. 3) ("Clifton Decl."), "the BVI Courts have no jurisdiction to hear the prospective BVI claim because there is not a sufficient nexus to the BVI." (Clifton Decl. ¶ 7.) BVI courts have no personal jurisdiction over LDC. Nor are there potential plaintiffs in the BVI—the Russian National Bank Trust has admitted that "[a]ll of the Conduit Companies have been liquidated or dissolved." (Dooley Decl. ¶ 10.)

Therefore, as a matter of BVI corporate law, the dissolved entities (the Russian National Bank Trust's hook for BVI jurisdiction) are unable to defend or participate in any proceedings.  (Clifton Decl. ¶¶ 17, 18.)

*Second*, many (if not most) of the trades at issue with LDC contain binding arbitration agreements to arbitrate in London pursuant to LCIA Rules.  The representative "record[] reflecting import credit agreements believed to be fraudulent involving" LDC attached to the Dooley Declaration (Dooley Decl. ¶ 27), for example, provides that "[a]ny dispute arising out of or in connection with this contract, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the Rules of the London Court of International Arbitration, which Rules are deemed to be incorporated by reference into this clause" (ECF No. 3-2 § 8.2).  To the extent that the BVI jurisdictional hook is the dissolved Conduit Companies,[5] those Conduit Companies agreed to arbitrate in London.

*Third*, even if jurisdiction were to be found and the binding arbitration clauses could be overcome, applicable sanctions would likely foreclose the ability of the Russian National Banks to proceed with their action.  Today, the Central Bank of Russia, the National Wealth Fund of the Russian Federation, the Ministry of Finance of the Russian Federation, and other Russian financial authorities are under unprecedented global sanctions meant to "restrict[] Russia's ability to financially sustain its war" in Ukraine.[6]  While the Russian National Bank Trust merely

---

[5]     In a jurisdictional chain nearly as complex a Russian nesting doll as the transactions at issue, claims would assumedly somehow be brought by the dissolved Conduit Companies by and through Rost Bank and/or Binbank, both of whom have been absorbed by the Russian National Bank Trust, who would direct the litigation under the control of the Central Bank of Russia for the benefit of the Russian federal government and its sanctioned head of state Vladimir Putin.

[6] *See* Press Release, Dep't. of Treasury, *Treasury Prohibits Transactions with Central Bank of Russia and Imposes Sanctions on Key Sources of Russia's Wealth* (Feb. 28, 2022), https://home.treasury.gov/news/press-releases/jy0612.

acknowledges that its current owner, the Central Bank of Russia, "is subject to limited sanctions," and its previous owner "Bank Otkritie is currently a designated entity" (Dooley Decl. ¶ 9), it fails to fully confront the fact that it is a puppet controlled entirely by the Russian federal government and ultimately Vladimir Putin by and through his Central Bank of Russia Chairwoman Elvira Nabiullina (all of whom are the subject of heavy sanctions).  (Clifton Decl. ¶¶ 28–33.)  Applicant's assurance that the Russian National Bank Trust "is not a designated entity" and any applicable "sanctions do not extend to [the] ownership of" the Russian National Bank Trust (Dooley Decl. ¶ 9) rings hollow when, as a practical matter, it will never be able to hire counsel in the BVI (a requirement in order to proceed in the Commercial Division of the BVI Court) (Clifton Decl. ¶¶ 31, 33).

> **(b)** **The BVI Action is not in "reasonable contemplation."**

Even if (i) BVI courts had jurisdiction, (ii) the Russian National Bank Trust found a way to overcome the sanctions issue, *and* (iii) the resulting litigation was not foreclosed by binding arbitration clauses, there is *still* cause to doubt that the BVI action would qualify as a "proceeding" under § 1782.  While an underlying proceeding "need not be 'pending' or 'imminent,'" the "'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation."  *Intel Corp.*, 542 U.S. at 247.  The applicant must therefore "provide some objective indicium that the action is being contemplated"—something "more than a subjective intent."  *In re Asia Mar. Pac. Ltd.*, 253 F.Supp.3d 701, 707 (S.D.N.Y. 2015) (quoting *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122-24 (2d Cir. 2015)). Applicant has provided no such objective indication that it in fact intends to bring an action in the BVI, most likely because such an action is impermissible, as already explained.  While the Applicant indicated in January that it would shortly file a claim in the BVI, four months later there

is no pending action in the BVI and, as far as LDC is aware, no signs of any proceeding being initiated in the near future.  (*See* Clifton Decl. ¶ 5.)

Rather than an aid to future contemplated proceedings, it therefore appears that the discovery sought under § 1782 may in fact be merely an impermissible fishing expedition to identify Shishkhanov's global assets, in order to satisfy potential judgments in the several enforcement cases the Russian National Bank Trust and its owners—government authorities at the Central Bank of Russia—have brought against Shishkhanov.[7]  Applicant therefore appears to have dreamt up proceedings in the BVI, which have no credible legal basis and no prospect of actually materializing, for other collateral reasons.  This is a misuse of the § 1782 process and should not be countenanced.

As Courts in this district have held, "neither pre-judgment attachment nor post-judgment enforcement proceedings are 'adjudicative' in nature," and therefore a search for global assets to satisfy an existing or expected judgment in an unrelated action cannot justify a § 1782 application. *Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14 Civ. 9997 (CM), 2015 WL 3439220, at *6 (S.D.N.Y. Feb. 5, 2015); *see In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15 MISC 319(LTS), 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) ("[A]s to Tadema and Taleveras Group, the discovery Petitioners seek is precluded by the Second Circuit's decision in *Euromepa*, because the liability of Tadema and Taleveras Group has already been conclusively established by the English court action.") (internal citation omitted).

Given the serious flaws with the Russian National Bank Trust's Application, including

---

[7]    *See* Reuters, *Russia's Trust bank sues ex-B&N execs for 306.5 billion roubles* (Sept. 18, 2020),  https://www.reuters.com/article/us-russia-banks-b-n-trust-idUKKBN26924V  (discussing Central Bank of Russia's 2020 lawsuit through the Russian National Bank Trust "against former executives of B&N bank, including Mikail Shishkhanov, for 306.5 billion roubles ($4 billion)").

both its factual basis and legal justification, LDC respectfully requests an opportunity to move to quash the Subpoenas and that the Court stay compliance with discovery pending full briefing of that motion.

## II.     The Proposed Intervenors Should Be Permitted To Intervene As Of Right.

Under Federal Rule of Civil Procedure 24(a)(2), the Court must grant intervention where (1) the application is timely; (2) the applicant for intervention claims an interest relating to the property or transaction that is the subject of the action; (3) without intervention, the protection of that interest may be practically impaired or impeded by the disposition of the action; and (4) that interest is not adequately represented by the existing parties. *See United States v. New York*, 820 F.2d 554, 556 (2d Cir. 1987). "A motion to intervene as a matter of right . . . should not be dismissed unless it appears to a certainty that the intervener is not entitled to relief under any set of facts." *Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 46 6 (E.D.N.Y. 1999).  Courts routinely grant intervention as of right in cases involving requests for judicial assistance under 28 U.S.C. § 1782.  *See In re SPS I Fundo de Investimento de Acoes Investimento no Exterior*, No. 22- mc 00118 (LAK), ECF No. 17 at 1 (S.D.N.Y. May 20, 2022) (granting request to intervene as of right in Section 1782 action); *In re Rep. of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 110 F.Supp.3d 512, 513 n.1 & 514 (S.D.N.Y. 2015) (intervenors' motion to intervene as of right in Section 1782 action was granted at oral argument).

LDC meets the statutory requirements for intervention as of right.  *First*, the intervention is timely even after the Application has been granted.  The timeliness of a motion to intervene is committed to the sound discretion of the district court and must be based on all circumstances of the case.  *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 251 (S.D.N.Y. 1995). Non-exhaustive factors that guide a timeliness analysis include "(1) the length of time the applicant

knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances militating for or against a finding of timeliness." *Farmland Dairies v. Comm'r of New York State Dep't of Agric. & Markets*, 847 F.2d 1038, 1044 (2d Cir. 1988).

Here, LDC's interest in the matter was brought to the Court's and Applicant's attentions *before* the Application was granted (*see* ECF No. 10 (the Letter)). And the instant Motion is being filed less than three weeks after the Court's April 18, 2023 Order. *See In re Hornbeam Corp.*, 14 Misc. 424 (Part 1), 2015 WL 13647606, at *3 (S.D.N.Y. Sept. 17, 2015) (finding that there can be "no dispute" that the motion to intervene is timely where the nonparty filed its motion within one month of discovering the § 1782 proceedings).

*Second*, Proposed Intervenors have a "direct, substantial, and legally protectable" interest in the discovery because the Applicant seeks confidential bank records and other information from multiple respondents relating to dozens of letters of credit allegedly issued to LDC totaling more than $665 million in financing, which Applicant states it plans to use against LDC in proceedings that the Applicant purportedly plans to bring in the BVI.[8] *See Hornbeam*, 2015 WL 13647606, at *3 ("part[ies] against whom the requested information will be used [] ha[ve] standing to challenge the issuance of § 1782 subpoenas under the Rules of Civil Procedure and under the statute itself." (quotation omitted)).

*Third*, without intervention, the Proposed Intervenors would be prejudiced because that would result in the disclosure of their confidential business information—on a basis which LDC

---

[8]     As noted, LDC does not concede that the requested documents are "for use" in an allegedly contemplated foreign proceeding, as required by § 1782.

contends is not authorized by statute—without even the opportunity to be heard.  *See Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 21 (E.D.N.Y. 1996) (granting motion to intervene and noting that denial "would force the movants to risk losing confidential documents, without them ever being afforded an opportunity to protect that information"); *see also Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, No. 14-874-SLR/SRF, 2015 WL 5163035, at *2 (D. Del. Sept. 3, 2015) ("Courts have found that the threat of disclosure of confidential or privileged information constitutes an interest that may be affected and impaired.").[9]

*Fourth*, the Proposed Intervenors can meet their "minimal" burden to show that the Respondents' representation of the LDC's interests "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *LaRouche v. FBI*, 677 F.2d 256, 258 (2d Cir. 1982).  As an initial matter, no Respondent has indicated yet it will oppose the Application or move to quash the Subpoenas—so there is currently no other representation on which LDC could rely.  *Hornbeam*, 2015 WL 13647606, at *3.  Moreover, even were the Respondents to oppose the Application and Subpoenas, their interests would diverge from the Proposed Intervenors' interests because Respondents do not have the same stake in protecting LDC's interests and confidentiality, particularly as the documents sought will not be used against Respondents or their affiliates in the foreign proceedings.  Understandably, it almost certainly would be less burdensome for Respondents simply to respond to the Subpoenas rather than investigate the merits of the Applicant's proposed BVI litigation, analyze bases for moving to quash the subpoena, and retain counsel to prepare such a motion.  As such, LDC must move to protect its own interests.

---

[9]      Nor would Applicant be prejudiced by a delay—despite the fact that it chose to file the Application *ex parte*, nothing in the filings indicates a pressing deadline or emergency status.

**III.    Alternatively, the Proposed Intervenors Should Be Permitted To Intervene Based on the Court's Discretion.**

The Court should permit intervention under Federal Rule of Civil Procedure 24(b), which authorizes the district court to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B); *see also Comer v. Cisneros*, 37 F.3d 775, 801 (2d Cir. 1994) (finding intervention proper where intervenors had claims that presented common issues of fact and identical issues of law as those of the original plaintiffs, and intervention would not unduly delay or prejudice the adjudication of the rights of the original parties).  A "claim or defense" requires only "some interest on the part of the applicant."  *Dow Jones*, 161 F.R.D. at 254.  Permissive intervention is "to be liberally construed" in favor of intervention, *Degrafinreld v. Ricks*, 417 F.Supp.2d 403, 407 (S.D.N.Y. 2006), and the Court's discretion is "very broad."  *Dow Jones*, 161 F.R.D. at 254.  For these reasons, courts have routinely granted motions to intervene in 28 U.S.C. § 1782 proceedings under Federal Rule 24(b).  *See, e.g.*, *Hornbeam*, 2015 WL 13647606 at *3 (granting motion to permissively intervene in 28 U.S.C. § 1782 proceeding); *De Leon v. Clorox Co.*, No. 19-mc-80296-DMR, 2020 WL 4584204, at *4 (N.D. Cal. Aug. 10, 2020) (same).

**IV.    Discovery Should Be Stayed Pending Resolution of Threshold Issues Under Section 1782.**

Proposed Intervenors respectfully request that the Court stay compliance with the Subpoenas pending resolution of their motion to vacate the Order and/or quash the Subpoenas.  As the Second Circuit has observed, the only reason that "due process rights are not violated" by *ex parte* requests like the ones made here is because an *ex parte* order can be challenged "by moving to quash."  *Gushlak*, 486 Fed App'x. at 217—a right Applicant conceded in making its *ex parte* Application.  (ECF No. 2 at *11.)  Those rights would be rendered a dead letter if the only window for obtaining review of an *ex parte* order was after the requested information has been produced.

The Proposed Intervenors are not asking for extraordinary relief—merely restoration of the status quo that would have existed had the Application been filed with notice, allowing LDC and other interested parties to be heard prior to issuance of the Subpoenas.  Courts routinely stay compliance with subpoenas until the impacted party has an opportunity to be heard, including in § 1782 matters.  *See, e.g.*, *In re Request for Int'l Judicial Assistance (Letter Rogatory) from the Fed. Rep. of Brazil*, 687 F.Supp. 880, 887-88 (S.D.N.Y. June 8, 1988) (staying enforcement of subpoenas pending resolution of threshold § 1782 issues); *In re Kidd*, No. 3:20-mc-00016 (KAD), 2020 WL 3035960 (D. Conn. June 5, 2020) (staying compliance with § 1782 subpoenas pending the court ruling on respondents' objections to magistrate judge's ruling denying their motion to quash); *Pennwalt Corp. v. Durand-Wayland*, 708 F.2d 492, 494 (9th Cir. 1983) (treating a motion to quash as the "'written objection" called for by the Rule" and thus finding that, "[h]aving objected, [the responding party] was not obligated to produce the subpoenaed documents . . . until [the subpoenaing party] obtained an order directing compliance."); *In Re Verifone, Inc.*, No. 18-mc-80087-VKD, 2018 WL 3532761, at *6 (N.D. Cal. July 23, 2018) (staying compliance with subpoena pending resolution of standing issue).

## <u>CONCLUSION</u>

For the foregoing reasons, LDC respectfully requests that this Court (1) grant Proposed Intervenors' Motion to Intervene in these proceedings; (2) stay compliance with the Subpoenas pending the Court's resolution of threshold issues under § 1782, and (3) grant such other and further relief as the Court deem just and proper.[10]

---

[10]    If the Court will allow intervention, Proposed Intervenors will request a pre-motion conference regarding a motion to quash the Subpoenas pursuant to Local Rule 37.2 within one week of the Court's order permitting intervention.

Dated: New York, New York
        May 4, 2023

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:       */S/ Darrell S. Cafasso*

Darrell S. Cafasso
Harry F. Murphy
Thomas M. Garvey, Jr.
dcafasso@orrick.com
hmurphy@orrick.com
tgarvey@orrick.com

51 West 52nd Street
New York, NY  10019-6142
+1 212 506 5000

*Attorneys for Proposed Intervenors*
   *Louis Dreyfus Company Suisse SA;*
   *Louis Dreyfus Company Asia PTE Ltd.; AND*
   *Louis Dreyfus Company Trading & Service*
   *Co. SA*