UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re *Ex Parte* Application, Under 28 U.S.C. § 1782, of Public Joint Stock Company National Bank Trust | No. 23-MC-00006 (PGG) |

**PUBLIC JOINT STOCK COMPANY NATIONAL BANK TRUST'S
MEMORANDUM OF LAW IN OPPOSITION TO PROPOSED INTERVENORS'
MOTION TO INTERVENE AND TO STAY RESPONDENTS' OBLIGATION
<u>TO COMPLY WITH SUBPOENAS</u>**

STEPTOE & JOHNSON LLP

Charles Michael
Evan Glassman
Jason E. Meade
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Public Joint Stock Company
National Bank Trust*

June 2, 2023

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................................ 1

ARGUMENT .................................................................................................................................... 2

    I.   LDC'S PROPOSED MOTION TO QUASH IS WITHOUT MERIT ................................. 3

        A.  The Requested Discovery is "For Use" in BVI Proceedings ........................................... 3

        B.  The BVI Proceedings are Actually Pending and Not Merely Speculative ...................... 6

   II.  THERE IS NO REASON TO STAY DISCOVERY ............................................................ 8

CONCLUSION ................................................................................................................................. 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017) ................................................................................................. 3, 8

*In re Att'y Gen. of British Virgin Islands*,
    No. 1:21-mc-00768, 2021 WL 5361073 (S.D.N.Y. Oct. 29, 2021) .......................................... 4

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ....................................................................................................... 4

*Cargill, Inc. v. Public Joint-Stock Co. Nat'l Bank Trust*,
    No. 23-mc-00134 (S.D.N.Y. Apr. 29, 2023) ............................................................... 1, 2, 3, 4

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ................................................................................................. 6, 7

*Deposit Ins. Agency v. Leontiev*,
    17-mc-00414, 2018 WL 3536083 (S.D.N.Y. July 23, 2018) ................................................ 7, 8

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ..................................................................................................... 4

*In re Furstenberg Fin. SAS*,
    334 F. Supp. 3d 616 (S.D.N.Y. 2018) ...................................................................................... 7

*In re Hornbeam Corp.*,
    No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ........................................ 4, 6

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ................................................................................................. 6, 7

*In re Nat'l Bank Trust*,
    No. 20-mc-85(CSH), 2023 WL 2386392 (D. Conn. Mar. 7, 2023) .......................................... 5

*In re Noguer*,
    No. 18-mc-498(JMF), 2019 WL 1034190 (S.D.N.Y. Mar. 5, 2019) ........................................ 3

*In re PJSC Nat'l Bank Trust*,
    No. 23-mc-00867(PKC), 2022 WL 3925737 (S.D.N.Y. Aug. 31, 2022) ................................. 6

*In re Tethyan Copper Co. Pty. Ltd.*,
    No. 21 Misc. 377, 2022 WL 1266314 (S.D.N.Y. Apr. 28, 2022) ............................................. 3

*In re Top Matrix Holdings Ltd.*,
　　No. 18-mc-465(ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ............................................6

**Statutes**

28 U.S.C. § 1782................................................................................................................*passim*

Public Joint Stock Company National Bank Trust ("NBT"), by and through its undersigned counsel, hereby submits this memorandum of law, and accompanying declarations with exhibits thereto, in opposition to Louis Dreyfus Company Suisse SA, Louis Dreyfus Company Asia PTE Ltd., and Louis Dreyfus Company Trading & Service Co. SA's (collectively, "LDC") motion to permit LDC to intervene in order to oppose the discovery sought in this action and to stay compliance with any subpoenas issued in this action (the "Motion").

## BACKGROUND

On January 10, 2023, NBT filed an *ex parte* application to seek discovery from certain U.S. banks for use in anticipated foreign proceedings in the British Virgin Islands ("BVI"), pursuant to 28 U.S.C. § 1782 (the "Application"). *See* ECF No. 1. NBT indicated that it expected to use the evidence obtained pursuant to the Application to aid in anticipated proceedings that it intended to initiate in the BVI. This Court granted the Application and authorized NBT to take the requested discovery by order dated April 18, 2023. *See* ECF No. 11.

LDC filed this Motion on May 4, 2023, seeking permission to intervene, so that it could file a motion to quash the subpoenas issued pursuant to the Application.[1] LDC alleges that the anticipated BVI proceedings were illusory, that such proceedings would be practically impossible and that NBT never really intended to bring them anyway, and that NBT had misled the Court and abused the § 1782 process as pretext for some other, nefarious purpose. None of this is true. Indeed, LDC's speculation about the existence *vel non* of the BVI proceedings is demonstrably false, and the entire premise of its Motion is inaccurate.

---

[1] On April 29, 2023, Cargill, Incorporated ("Cargill") filed a separate motion to quash the subpoenas, in a related action which has been reassigned to this Court. *See Cargill, Inc. v. Pub. Joint Stock Co. Nat'l Bank Trust*, No. 23-mc-00134-PGG, ECF No. 1 (S.D.N.Y. Apr. 29, 2023).

The accompanying June 1, 2023 Declaration of Andrew Emery ("Emery Decl."), a partner at the law firm of Emery Cooke in the BVI, confirms that the BVI proceedings are underway. NBT retained Emery Cooke in April 2022 to advise it in connection with NBT's claims in the BVI arising out of the fraudulent conduct described in the Application. Emery Decl. ¶ 6. In September 2022, NBT made an application to restore the status of certain previously-dissolved BVI companies, so that they could be joined as parties to subsequent substantive proceedings. *Id.* ¶ 11. That order, ordering that the companies be restored to the register, was granted in February 2023 by Justice Wallbank of the Commercial Division of the BVI court. *Id.* ¶ 12. On May 4, 2023, NBT filed an application for permission to issue and serve proceedings outside of the jurisdiction on foreign defendants, including Cargill. *Id.* ¶ 16. The application was heard and granted by Justice Wallbank on May 11, 2023. *Id.* ¶ 17. In so doing, Justice Wallbank determined that NBT had presented a serious issue to be tried on the merits, that the BVI was the appropriate forum for trial of the dispute, and that NBT had satisfied the requirements for service out of the BVI. *Id.* ¶ 18. NBT anticipates that it will serve the BVI proceedings on the foreign defendants by the end of June 2023.

## ARGUMENT

NBT does not oppose LDC's intervention in this matter. However, as set forth herein, LDC's proposed motion to quash is without merit. The arguments advanced by LDC in support of its anticipated motion are nearly identical to those made by Cargill in its separate motion to quash. *See* Motion to Quash, Memorandum of Law in Support of Motion to Quash, and Declarations of Oliver Clifton & Daniel L. Stein, *Cargill, Inc. v. Public Joint-Stock Co. Nat'l Bank Trust*, 23-mc-00134, ECF. No. 2-4 (S.D.N.Y. Apr. 29, 2023) ("Cargill Motion"). LDC's anticipated motion would be meritless for the same reasons that the Cargill Motion is meritless, and NBT hereby incorporates by reference the arguments made in its opposition to Cargill's

2

motion. *See* Public Joint-Stock Company National Bank Trust's Memorandum of Law in Opposition to Cargill, Inc.'s Motion to Quash, *Cargill, Inc. v. Public Joint-Stock Co. Nat'l Bank Trust*, No. 23-mc-00134, ECF No. 14 (S.D.N.Y. June 2, 2023) (June 2, 2023 Declaration of Evan Glassman ("Glassman Decl."), Ex. A, ECF No. 17). There would be little purpose in re-litigating these same issues.

I.  **LDC'S PROPOSED MOTION TO QUASH IS WITHOUT MERIT**

LDC contends that the requested discovery is not "'for use' in a foreign proceeding in 'reasonable contemplation' as required under § 1782," because a variety of purported obstacles would foreclose NBT's ability to proceed with its claims in the BVI. ECF No. 14 ("Memo") at 5. However, LDC's position rests on plainly erroneous factual assumptions concerning the status of legal proceedings in the BVI, and on legal arguments concerning BVI law, which this court is not obligated to resolve.

A.  **The Requested Discovery is "For Use" in BVI Proceedings**

To show that sought-after discovery is "for use" in a foreign proceeding, "a Section 1782 applicant must establish that he or she has the practical ability to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). An applicant "need only 'identify some discernible procedural mechanism' for introducing the evidence they seek" in order to satisfy its burden "to show that the foreign tribunal at issue will 'take and hear new evidence' in at least some respect." *In re Noguer*, No. 18-mc-498(JMF), 2019 WL 1034190, at *3 (S.D.N.Y. Mar. 5, 2019) (cleaned up). Here, it is clear that evidence, such as the discovery sought under the subpoenas, can be introduced into the BVI proceedings; "courts in this district routinely grant § 1782 applications for discovery for use in the BVI." *In re Tethyan Copper Co. Pty. Ltd.*, No. 21 Misc. 377, 2022 WL 1266314, at *2 (S.D.N.Y. Apr. 28, 2022); *see also id.* ("[T]he BVI Court has already accepted some evidence from Respondents, so

3

there is no indication it would not be receptive to further discovery requests."); *In re Att'y Gen. of British Virgin Islands*, No. 1:21-mc-00768, 2021 WL 5361073, at *1 (S.D.N.Y. Oct. 29, 2021) ("[T]he BVI High Court is a foreign tribunal receptive to U.S. federal court assistance[.]"); *In re Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) ("The BVI courts are at least not obviously unreceptive to my assistance."), *aff'd,* 722 F. App'x 7, 9-10 (2d Cir. 2018).

LDC contends that the discovery cannot be "for use" in a BVI proceeding because "a BVI court would not have jurisdiction over the claims that Applicant has indicated it plans to bring." Memo at 5. LDC relies on a declaration in support of the Cargill Motion by Oliver Clifton, a BVI-based attorney, in which he opines that the BVI court would not permit NBT to serve Cargill out of jurisdiction. *See* Clifton Decl. ¶¶ 9-12, 34 (Glassman Decl. Ex. B). But Mr. Clifton's speculation about what the BVI court *might* do is no substitute for what the BVI court has *actually done*.[2] In fact, the BVI court has already authorized NBT to serve proceedings out of jurisdiction, and in so doing has already concluded that, *inter alia*, NBT has met the necessary criteria to serve a foreign defendant and that the BVI is the proper forum for the dispute.[3] *See* Emery Decl. ¶ 18.

---

[2] Mr. Clifton also based his conclusion on a number of erroneous factual premises. For example, while Mr. Clifton claimed that "Diamond Forca has been dissolved and there is no realistic prospect of it being restored," Clifton Decl. ¶ 18, Diamond Forca had already been ordered to be restored by a BVI court order dated February 2, 2023. *See* Emery Decl. ¶ 12. Mr. Clifton also claimed that it was "a practical impossibility" for NBT "to retain BVI counsel," Clifton Decl. at 7, but NBT had already retained BVI counsel to advise on its claims by April of 2022. *See* Emery Decl. ¶ 6.

[3] The Second Circuit also has warned against efforts "to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law" based on "battle-by-affidavit of international legal experts," and rejected such "speculative forays into legal territories unfamiliar to federal judges" as "a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 n.1 (2d Cir. 2012) (noting that "a clear danger to comity and international relations is presented where a court familiar with one system of law attempts to declare the meaning of the laws in another legal system") (citation omitted).

LDC contends that the trades at issue "contain binding arbitration agreements to arbitrate in London pursuant to LCIA Rules." Memo at 6. But NBT, which is the claimant in the BVI proceedings, was not a party to any arbitration agreements with any of the defendants. *See* Emery Decl. ¶¶ 21-22. Moreover, the BVI court has already been advised of this issue and did not find it to be an obstacle to NBT's application to serve proceedings out of jurisdiction. *See id.* ¶ 17. The defendants will, of course, be free to raise any potential jurisdictional or contractual defenses during those BVI proceedings.

Finally, LDC's contention that "applicable sanctions would likely foreclose the ability of the Russian National Banks to proceed with their action" because, "as a practical matter, it will never be able to hire counsel in the BVI," Memo at 6-7, rings hollow given that that NBT retained BVI counsel a year ago to advise on its claims there. *See* Emery Decl. ¶ 6. LDC's repeated efforts to the purportedly preclusive effect of sanctions serve little purpose other than to attempt to smear NBT. *See, e.g.*, Memo at 6 n.6 (arguing that NBT "would direct the litigation under the control of the Central Bank of Russia for the benefit of the Russian federal government and its sanctioned head of state Vladimir Putin"); 7 (arguing that NBT "is a puppet controlled entirely by the Russian federal government and ultimately Vladimir Putin"). And it is clear that "U.S. sanctions on the Central Bank and other Russian entities neither directly bar the relief NBT seeks nor constitute sufficient discretionary grounds to deny NBT's application." *In re Nat'l Bank Trust*, No. 3:20-mc-85(CSH), 2023 WL 2386392, at *11 (D. Conn. Mar. 7, 2023); *id.* at *10 ("[I]t is simply not the place of this Court to engage in foreign policy. This Court's ambit is to apply the law as laid out in the Constitution, federal statutes, and federal regulations to the cases that come before it; it is not to divine from such documents a general U.S. policy

disfavoring a foreign entity, and on that basis to deny relief to which that entity would otherwise be entitled.").[4]

Accordingly, NBT has demonstrated that it has the "practical ability" to introduce evidence into a foreign proceeding in the BVI.

### B. The BVI Proceedings are Actually Pending and Not Merely Speculative

The underlying foreign proceedings "must be within *reasonable* contemplation," and so "the applicant must have more than a subjective intent to undertake some legal action, and must instead provide some objective indicium that the action is being contemplated." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015) (emphasis in original). It is clear that NBT presented sufficient indicia for this Court to determine that the proceedings were within reasonable contemplation at the time the Application was filed. Moreover, the BVI proceedings are now actually pending, thereby rendering moot LDC's speculation that NBT does not "in fact intend[] to bring an action in the BVI, most likely because such an action is impermissible." Memo at 7.

The Application was accompanied by a sworn declaration from counsel, which indicated that NBT "intends to initiate [proceedings] shortly in the British Virgin Islands," and explained the legal theories on which NBT intends to rely. ECF No. 3 ¶¶ 3, 54-58. Courts within this circuit have "found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement." *In re Top Matrix Holdings Ltd.*, No. 18-mc-465(ER), 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020); *see, e.g.*, *In re Hornbeam Corp.*, 722 F. App'x at 9-10 (summary

---

[4] *See also In re PJSC Nat'l Bank Trust*, No. 23-mc-00867(PKC), 2022 WL 3925737, at *1 (S.D.N.Y. Aug. 31, 2022) ("[T]he Court is unable to conclude that an Order permitting a Russian entity to conduct discovery in aid of litigation in Cyprus should be vacated because the EU subsequently sanctioned NBT, coupled with the foreign policy of the United States that condemns the actions of the country in which NBT is organized.").

6

order) (finding a "sufficiently 'concrete basis'" for contemplated foreign proceeding where applicant "represented that it intended to initiate further litigation" and "articulated a theory on which it intended to litigate"); *In re Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619 (S.D.N.Y. 2018) ("[A]pplicants carried their burden of showing that a foreign proceeding is within reasonable contemplation by filing declarations swearing that they intend to file a criminal complaint against the movant, and articulating a specific legal theory on which they intend to rely."), *aff'd*, 785 F. App'x 882 (2d Cir. 2019); *compare Certain Funds*, 798 F.3d at 124 (denying application where applicant alleged only "that they had retained counsel and were discussing the *possibility* of initiating litigation") (emphasis in original).

LDC's speculation that NBT "appears to have dreamt up proceedings in the BVI, which have no credible legal basis and no prospect of actually materializing, for other collateral reasons," Memo at 8, simply does not comport with the facts. As discussed, NBT has already sought—and obtained—permission from the BVI courts to initiate the proceedings and to serve foreign defendants. *See* Emery Decl. ¶¶ 17-18. Proceedings in the BVI are not only within reasonable contemplation, but they are now pending. *See id.* ¶ 20.

Nonetheless, LDC suggests conspiratorially that NBT "may in fact be merely an impermissible fishing expedition to identify Shishkhanov's global assets, in order to satisfy potential judgments in the several enforcement cases the Russian National Bank Trust and its owners—government authorities at the Central Bank of Russia—have brought against Shishkhanov." Motion at 8.[5] LDC has presented no evidence that this is the case. Moreover, the

---

[5] LDC also disputes NBT's characterization of the facts underlying the BVI proceedings, and suggests that such dispute demonstrates that "[t]he Application is therefore little more than a fishing expedition." Memo at 4-5. This Court has already received and reviewed NBT's factual submissions in connection with its original Application, and NBT will not restate those facts or rebut each assertion made by LDC here. It goes without saying that NBT strongly disputes LDC's characterization of the facts and is confident that it will be able to prove its case in the BVI proceedings. Moreover, "[i]n a § 1782 proceeding, the only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal." *Deposit Ins. Agency v. Leontiev*, No. 17-mc-00414(GBD)(SN),

7

Second Circuit has expressly held that "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." *Accent Delight Int'l*, 869 F.3d at 135. The possibility that discovery obtained under a § 1782 application for use in one foreign proceeding could have relevance in another proceeding does not mean that the application is a "fishing expedition" and is not a reason to deny an application.[6]

Accordingly, this Court correctly determined that the BVI proceedings were within reasonable contemplation at the time of the Application and properly granted NBT's request to take discovery under § 1782 for use in those proceedings.

## II.   THERE IS NO REASON TO STAY DISCOVERY

LDC asks that the Court "stay compliance with the Subpoenas pending resolution of their motion to vacate the Order and/or quash the Subpoenas." Memo at 12. Cargill's motion to quash the subpoenas has already been fully briefed, and LDC has relied upon Cargill's submission in support of its own Motion. *See, e.g.*, Motion at 1 n.3 (acknowledging Cargill's motion and indicating that "LDC agrees with Cargill, Inc. that the Subpoenas should be quashed"), 4 ("As Cargill has now explained in the Cargill action . . ."), 5 ("as explained more fully in the Declaration of Oliver Clifton in Support of Cargill, Inc.'s Motion to Quash . . ."). LDC intends to file a separate motion to quash if it is allowed to intervene, but its anticipated arguments in that motion are already clearly spelled out in its motion to intervene. *See* Memo at 5-8 (arguing that

---

2018 WL 3536083, at *10 (S.D.N.Y. July 23, 2018) (cleaned up). Accordingly, the court in *Leontiev* concluded that, to the extent that there was "a disputed version of the facts underlying the" foreign proceeding, that was something "which the Court is not permitted to resolve at this time." *Id.* at *11.

[6] Additionally, NBT is prepared to enter a Stipulated Confidentiality Agreement and Protective Order which expressly limits its use of any documents obtained pursuant to the Application to the BVI proceedings and any future civil or criminal proceedings related to or arising from the BVI proceedings. *See* Glassman Decl. Ex. D.  This Stipulated Confidentiality Agreement and Protective Order is adapted from this Court's Model Stipulated Confidentiality Agreement and Protective Order.

its proposed motion to quash is meritorious), 9 (seeking "full briefing of that motion"). Those arguments are nearly identical to those already raised by Cargill and do not require further briefing to resolve. *See* Glassman Decl. Ex. C. There is no need for additional briefing to resolve any issues relating to NBT's Application, and no need for a stay in the interim.

## CONCLUSION

For the foregoing reasons, the Court properly exercised its discretion in granting the Application. Accordingly, LDC's anticipated motion to quash is without merit, and its request for a stay should be denied.

Dated: June 2, 2023
       New York, New York

STEPTOE & JOHNSON LLP

By: */s/ Evan Glassman*
Charles Michael
Evan Glassman
Jason E. Meade
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900

*Counsel for Public Joint-Stock Company National Bank Trust*